**O**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| DELFA MELENDEZ, an individual, | CASE NO. CV 11-3842 ODW (CWx) |
| Plaintiff, | ORDER DENYING PLAINTIFF'S MOTION TO REMAND [9] |
| v. | |
| HMS HOST FAMILY RESTAURANTS, INC., a California Corporation, ARMANDO MEDRANO, an individual, and DOES 1 through 20, inclusive, | |
| Defendants. | |

Currently before the Court is Plaintiff Delfa Melendez's ("Plaintiff") Motion to Remand. (Dkt. No. 9.) Having considered the papers filed in support of and in opposition to the instant Motion, the Court deems the matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78 ("Rule __"); L.R. 7-15. For the following reasons, the Court **DENIES** Plaintiff's Motion.

## I.   BACKGROUND

Plaintiff's Complaint alleges the following:

Defendant HMS Host Family Restaurants, Inc. ("Defendant") hired Plaintiff as a food pantry worker at its Los Angeles International Airport location. (Compl. ¶ 13.) Plaintiff's hourly wage was $9.12 for an average of forty-five hours per week. (*Id*.) On or about January 8, 2009, Plaintiff began feeling pain in both her wrists and her hands while working, and shortly thereafter, Plaintiff informed her manager. (*Id*. ¶¶ 14-15.) Plaintiff's doctor instructed work restrictions that were subsequently relayed to her manager on January 12, 2009. (*Id*. ¶ 16.) On January 31, 2009, Plaintiff was verbally and in writing laid-off because she was too "slow." (*Id*. ¶ 17.)

Based on the foregoing, Plaintiff brings the following claims against Defendant: (1) Breach of Covenant of Good Faith and Fair Dealing; (2) Age Discrimination in violation of the Fair Employment and Housing Act ("FEHA"); (3) Failure to Accommodate in violation of the FEHA; (4) Disability Discrimination in violation of FEHA; (5) Retaliation; (6) Wrongful Termination in violation of public policy; and (7) Violation of Business & Professions Code § 17200 *et seq*.

Plaintiff filed this action in Los Angeles County Superior Court on January 26, 2011. On May 4, 2011, Defendant removed the case to this Court. Plaintiff now argues that removal was improper because Defendant has failed to show by a preponderance of the evidence that the requisite amount in controversy exceeds $75,000.00.

## II.   LEGAL STANDARD

Federal courts are courts of limited jurisdiction, having subject matter jurisdiction only over matters authorized by the Constitution and Congress. *See, e.g., Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A suit filed in state court may be removed to federal court if the federal court would have had original jurisdiction over the suit. 28 U.S.C. § 1441(a). A removed action must be remanded to state court if the federal court lacks subject matter jurisdiction. 28 U.S.C. § 1447(c). "The burden of

1   establishing federal jurisdiction is on the party seeking removal, and the removal statute

2   is strictly construed against removal jurisdiction." *Prize Frize, Inc. v. Matrix (U.S.) Inc.*,

3   167 F.3d 1261, 1265 (9th Cir. 1999), *superseded by statute on other grounds as stated*

4   *in Abrego v. Dow Chem.* Co., 443 F.3d 676, 681 (9th Cir. 2006).

5         Accordingly, pursuant to 28 U.S.C. § 1441(a), "any civil action brought in a State

6   court of which the district courts of the United States have original jurisdiction, may be

7   removed by the defendant or the defendants, to the district court of the United States for

8   the district and division embracing the place where such action is pending." Section

9   1332(a), in turn, provides that "the district courts shall have original jurisdiction of all

10  civil actions where the matter in controversy exceeds the sum or value of $75,000.00,

11  exclusive of interest and costs," and is between parties with diverse citizenship. 28 U.S.C.

12  § 1332(a).

13  **III.   DISCUSSION**

14        Plaintiff moves the Court to remand this case arguing that her claims do not meet

15  the amount in controversy necessary for diversity jurisdiction.  Specifically, Plaintiff

16  contends that Defendants have not proven that it is more likely than not that the amount

17  in controversy exceeds the jurisdictional limit of $75,000.00. On the contrary, Defendant

18  contends removal was proper because an actual award of back pay, front pay, attorneys'

19  fees, and punitive damages will be above the jurisdictional limit.  The Court addresses

20  the parties' arguments to the extent necessary.

21        In cases in which a plaintiff's state court complaint does not specify an exact figure

22  for damages, as here, the defendant must establish, by a preponderance of the evidence,

23  that the amount in controversy exceeds the statutory minimum.  *See Sanchez v.*

24  *Monumental Life Ins. Co.*, 102 F.3d 398, 403 (9th Cir. 1996) (holding that where the

25  amount at stake was not clear from allegations in the complaint, defendant seeking to

26  remain in federal court has the burden "of actually proving the facts to support

27  jurisdiction, including the jurisdictional amount").  Courts look to "the time of the filing

28

1   of a complaint" to determine whether complete diversity exists. *In re Haw. Fed. Asbestos*

2   *Cases*, 960 F.2d 806, 810 (9th Cir. 1992).  Also, the Court finds proof from the notice of

3   removal and may, if it chooses, construe the opposition to the motion to remand

4   as an amendment to the notice of removal. *See Cohn v. Petsmart, Inc*., 281 F.3d 837, 840

5   n.1 (9th Cir. 2002).  Federal jurisdiction must be rejected if there is any doubt as to the

6   right of removal in the first instance.  *Gaus v. Miles, Inc*., 980 F.2d 564, 566 (9th Cir.

7   1992) (citations omitted); *see also* 28 U.S.C. 1447(c).  Based on the following, the Court

8   finds that Defendant has shown that damages will more likely than not exceed

9   $75,000.00.

10   **A.    BACK PAY**

11   The parties agree that if Plaintiff were to succeed on any of her FEHA claims, she

12   would be entitled to back pay.  Also, the parties do not dispute that under FEHA, back

13   pay is awarded from the time of the adverse employment action until the date of judgment

14   and includes past lost wages and lost benefits.

15   With respect to past lost wages, Defendant calculates that Plaintiff's potential lost

16   wages to be approximately $68,468.00.[1]  (Opp'n at 8-9.)  Plaintiff does not generally

17   dispute this amount.[2]  She contends, however, that any amount for lost wages would be

18   subject to an offset or reduction in the amount equal to the disability benefits she received

19   during this time in the amount of $21,044.00 ($19,404.00 + $1,640.39). (Mot. at 6; Reply

20   at 5.)  Because the Court is inclined to consider such mitigating evidence, Plaintiff's

21   evidence of the amount totaling her disability benefits will reduce the amount in

22   controversy for purposes of this motion.  *See Lamke v. Sunstate Equip. Co.*, 319 F. Supp.

23   2d 1029, 1033 (N.D. Cal. 2004) (holding that in order to determine the amount in

24   controversy, a court may have to consider facts regarding mitigation of damages under

25   _____

26   [1] This amount is calculated as follows: (($9.24 x 40 hours per week) + ($13.46 x 5 hours per week for overtime) x 52 weeks a year / 12 months x 36 months).  Defendant estimates the date of judgment to be around January 2012 - one year from the filing of the Complaint.  Accordingly, Defendant assumes 36 months to have lapsed between the adverse employment action to the date of judgment.

27   

28   

[2] While Plaintiff argues that she worked 42.5 hours per week, the Complaint alleges her work week to have been 45 hours long.  Because the Complaint alleges 45 hours per week, the Court's calculations will assume as such.

1   the preponderance of the evidence test); *see also Birkenbuel v. M.C.C. Constr. Corp.*, 962

2   F.Supp. 1305 (D. Mont. 1997) (holding that where mitigation is a mandatory

3   consideration in the statutory definition of a claim's potential damages, the court must

4   consider evidence of mitigation in deciding whether to remand to state court).

5   Accordingly, the Court finds that it is more likely than not that the Plaintiff's potential

6   award for past lost wages is approximately $68,468.00 - $21,044.00 = $47,424.00.

7       Next, while the Court recognizes the potential to include other benefits in its back

8   pay calculations, Defendant fails to provide sufficient evidence in support of its

9   conclusion that certain health benefits must be included.  Specifically, Defendant argues

10  that Plaintiff would be entitled to health benefits as part of a back pay award in the

11  amount of $22,743.00.[3]  (Opp'n at 9.)  Other than blanket unsupported statements made

12  by a human resources manager in a declaration, (Dkt. No. 4), the Court cannot ascertain

13  the basis supporting Defendant's calculations.  Such speculative statements as to the

14  amount in controversy are simply insufficient. *Gaus*, 980 F.2d at 567.  The defendant

15  bears the burden of "actually proving the facts to support jurisdiction, including the

16  jurisdictional amount." *Id.*  As a result, "if [Defendant's] allegations of jurisdictional facts

17  are challenged by [its] adversary in any appropriate manner, [Defendant]  must support

18  them by competent proof." *Id.*  Defendant fails to do so in this instance.  Thus, the total

19  amount for back pay remains at approximately $47,424.00.

20      **B.     FRONT PAY**

21      "Front pay" is a remedy of damages awarded "in lieu of reinstatement" that is

22  designed to represent "an award of future lost earnings" which is "temporary in nature."

23  *Cassino v. Reichhold Chems., Inc.*, 817 F.2d 1338, 1346-47 (9th Cir. 1987).  To be

24  entitled to an award of front pay, however, a plaintiff must make reasonable attempts at

25  mitigation. *See id.* ("front pay awards, like back pay awards, must be reduced by the

26

27

28      [3] Defendant contends that it would have paid health benefits on behalf of Plaintiff in the amount of: $3.13 per hour from April to December 2009; $3,76 per hour between January 2010 to December 2010; and $4.00 per hour between January 2011 to the present ($587.00 per month in 2009; $705.00 per month in 2010; and $750.00 per month in 2011).  Calculating from April 2009 to the estimated date of judgment, January 2012, Defendant contends that Plaintiff's potential award would be approximately $22,743.00 ($587 x 9 months + $705 x 12 months + $750 x 12 months).

1  amount plaintiff could earn using reasonable mitigation efforts"). If Plaintiff is

2  successful, the parties do not dispute that she will be entitled to damages that may include

3  front pay.

4        Here, Defendant contends that Plaintiff will be entitled to front pay damages for

5  a period of one year from the date of the judgment in the amount of $22,822.00

6  ($1901.90 per month x 12 months). While this amount may be reasonable, it is not

7  sufficiently justified. Plaintiff argues, and the Court finds, that there are too many

8  assumptions and variables that Defendant must have considered in calculating a front pay

9  amount for Plaintiff. *See Dupre v. General Motors*, 2010 WL 3447082, *4 (C.D. Cal.

10 2010) (noting that even a preponderance of the evidence standard could not be met

11 because "Defendant's calculations are based on many assumptions that leave the Court

12 to speculate as to the value of too many variables" and that the Court "'cannot base our

13 jurisdiction on Defendant's speculation and conjecture.'" (quoting *Lowdermilk v. U.S.*

14 *Bank Nat'l Ass'n*, 479 F.3d 994, 1002 (9th Cir. 2007)). For example, Defendant assumes

15 without justification that there will be no mitigating circumstances, and as a result,

16 Defendant calculates a full award for front pay without competent proof. Quite simply,

17 speculative assertions are insufficient to show that Plaintiff will more likely than not

18 receive an award for front pay. Accordingly, the total amount for the amount in

19 controversy remains at approximately $47,424.00.

20        **C.    ATTORNEYS' FEES AND PUNITIVE DAMAGES**

21        In calculating the amount in controversy, a court may consider both the amount of

22 damages in dispute, as well as attorneys' fees, if authorized by statute or contract. *Kroske*

23 *v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005). "[W]here an underlying statute

24 authorizes an award of attorneys' fees, either with mandatory or discretionary language,

25 such fees are to be included in the amount in controversy." *Galt G/S v. JSS Scandinavia*,

26 142 F.3d 1150, 1156 (9th Cir. 1998). In addition, the Court may also consider requested

27 punitive damages in determining the amount in controversy. *Bell v. Preferred Life Assur.*

28 *Soc. of Montgomery, Ala.*, 320 U.S. 238, 240 (1943); *see also*

*Gibson v. Chrysler Corp.*, 261 F.3d 927, 945 (9th Cir. 2001).  In providing evidence to demonstrate the amount of punitive damages in controversy, the removing party may point to jury verdicts in analogous cases.  *See, e.g., Simmons v. PCR Tech.*, 209 F. Supp. 2d 1029, 1033 (N.D. Cal. 2002).

In this case, Defendant contends that they would be entitled to, at least, $90,000.00 (300 hours at an approximate rate of $300.00 per hour) in attorneys' fees and $75,000.00 in punitive damages.  (Opp'n at 10-11.)  The Court does not necessarily agree with Defendant's calculation of a combined $165,000.00 for fees and punitive damages. Nevertheless, the Court finds reasonable that Plaintiff's potential recovery for attorneys' fees and punitive damages would be at least $28,000.00.  Accordingly, although attorneys' fees and a punitive damages award alone may not exceed the requisite $75,000.00, the fees and a punitive damages award of at least $28,000.00, combined with approximately   $47,424.00 in lost wages, will more likely than not exceed the jurisdictional minimum.  Therefore, this Court is satisfied that Defendant has met their burden of proving the jurisdictional minimum by a preponderance of the evidence.

## IV.    CONCLUSION

Based on the foregoing, the Court finds that the amount of controversy in this case is met and jurisdiction is proper under 28 U.S.C. § 1332.  Thus, the Court **DENIES** Plaintiff's Motion to Remand to state court because removal was proper.


IT IS SO ORDERED.

August 25, 2011

_____
HON. OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE